## J. R. RYAN ET AL. v. W. A. EVANS ET AL.

ORDINANCES OF CONSTITUTIONAL CONVENTION OF 1869—COUNTIES—
MANDAMUS.—The Constitutional Convention of 1868, August 26, passed an ordinance "creating the county of Webster" "out of portions of the counties of Fannin and Lamar," and it was by the ordinance made the duty of the County Court of Fannin county, as soon as convenient after the passage of the ordinance, "to organize the said county of Webster, by holding elections for the purpose of electing all county officers, or recommending suitable persons to the commander of the fifth military district to fill said offices." The County Court recommended to said commander persons as suitable for said offices, but no action was taken thereon. The adjourned session of the convention took no further action on the subject, nor has any legislative action subsequently been had. The Constitutional Convention of 1875 made no mention of Webster county in its apportionments of the counties in the State. August 23, 1876, proceedings were begun in the District Court of Fannin county for mandamus against the County Court of that county, to compel the organization of Webster county : *Held*—

1. The non-action by the military commander of the district may be considered as a disapproval of the ordinance.

2. The failure of the convention, when again in session, to take further action, may be considered evidence of abandonment of the project.

3. The declaration creating the existence of the county, but providing steps for its organization, did not, of itself, create the new county, so as to detach it from the old counties.

4. The failure by the Constitutional Convention of 1875 to recognize said county, may be regarded as an authoritative condemnation of its existence.

5. Hence it was not the clear duty of the County Court to act, and the mandamus was properly refused.

ERROR from Fannin. Tried below before the Hon. R. R. Gaines.

J. R. Ryan and others, plaintiffs in error, petitioned the judge of the District Court for a mandamus to compel the defendants in error, composing the County Court of Fannin county, to organize Webster county under an ordinance or declaration of the Constitutional Convention of 1868. Plaintiffs alleged that they were residents and legal voters within the limits of the territory set out by the declaration; that the declaration was regularly adopted by said convention: and that defendants refused to organize said .county. The declaration was made a part of the petition. The first section created or established the new county, to be called Webster, giving the metes and bounds; the second section required the organization to be in accordance with the act of 1848; the third section made it the duty of the County Court of Fannin county to proceed to organize the county by ordering an election, or recommending persons for appointment by the commanding general. The petition alleged that the County Court of Fannin county did recommend certain persons for appointment, but the commanding general failed to appoint them. Defendants appeared, and filed a general demurrer and special exceptions to the petition. The judgment of the court was given, sustaining the demurrer. Plaintiffs prosecuted error to this court.

*Throckmorton & Brown,* for plaintiffs in error.—The court erred in sustaining defendants' demurrer to plaintiffs' petition.

I. The convention which assembled, under the laws of Congress represented the sovereignty of the people. In establishing a civil government, it had full power and control over the form of that government, subject alone to the Constitution of the United States.

The convention which assembled under the act of Congress of March 23, 1867, supplemental to the reconstruction laws, (see 2 Paschal's Dig., p. 1093,) expresses the object

of the convention to be "for the purpose of establishing a Constitution and civil government."

The petition alleged that the convention was duly elected under the law, and that the declaration was regularly adopted by the convention.

The first special exception by defendants, was that the convention had no authority to pass the ordinance, which is said to be apparent from the petition. We cite, as authority upon the general powers of conventions of this kind, McMullen *v.* Hodges, 5 Tex., 73; Cooley on Const. Lim., pp. 33, 34; Constitutional Convention, by Jameson, pp. 291, 292.

To establish a Constitution and civil government, would necessarily require the convention to ordain or decree a Constitution in which the different departments of government are generally defined.

The subdivisions of a State, as counties and towns, are created for the convenience of government, and may be created by, or destroyed at, the will of the Legislature. The legislative power is derived from the people through the convention, and it would be a singular proposition of law to say that the convention could authorize the Legislature to do what it could not do itself. By this argument, the creature of the convention is invested with greater power than the creator possessed. It is a little difficult to understand such an argument.

II. The declaration being adopted by the convention, became a part of the Constitution, and the vote which adopted the Constitution also ratified the declaration.

The petition alleges that the Constitution was duly ratified by the people of the State. This involves a question of fact, and could not be raised by demurrer. (Stewart *v.* Crosby, 15 Tex., 546.) We call the attention of the court to the proceedings of the convention of 1866, in which various ordinances were enacted, among others No. XI, in section 6 of which the statute of limitations was suspended. The validity of this ordinance has been recognized in a number

of decisions of this court. (See Cunningham *v.* Perkins, 28 Tex., 488; Maloney *v.* Roberts, 32 Tex., 139.)

The ordinance referred to was never submitted to the people to vote upon. The ordinance of the convention defining what was the Constitution is No. IX, (1 Paschal's Dig., p. 949,) and the ordinance which submitted the matter to a vote is No. IV. (1 Paschal's Dig., p. 947.) By the terms of these ordinances, the one suspending limitation is not embraced in the Constitution, and was not submitted to a vote, but has been ever since recognized as binding and valid.

III. The law of 1848, and the declaration set up in the petition, made it the duty of the County Court of Fannin county to organize Webster county under this declaration.

The act of 1848, (Paschal's Dig., art. 1063,) enjoins it upon the County Court of the original county to organize the new one. The declarations sued upon (sections 2 and 3) also enjoin upon the people and County Court to organize this county.

The object of the declaration was the organization of the county, and the two modes designated only referred to the condition of affairs at that time. If organized before the reconstruction of the State, it could only be done by appointments made by the commanding general. If not organized until after reconstruction, it could only be done by ordering an election.

The failure of the commander to make appointments could not destroy the county. The law was still in force and obligatory upon the court, and, notwithstanding the recommendations made by the County Court, remained in force.

IV. The repeal of a law by implication is not favored. It is only sustained and enforced when the subsequent law embraces the same subject-matter, revising the whole subject-matter. (Stirman *v.* The State, 21 Tex., 736; Rogers *v.* Watrous, 8 Tex., 62; Harrison *v.* Knight, 7 Tex., 47; Bryan *v.* Sundberg, 5 Tex., 418.)

The Constitution adopted by the convention of 1875, art.

XI, sec. 1, recognizes and continues the several counties in existence. There is nothing in this Constitution repugnant to the declaration sought to be enforced.

V. The District Court has the power to issue writs of mandamus as known at common law. (Const. 1875, art. 5, sec. 8; compare sec. 16, same article; Kitchen v. Crawford, 13 Tex., 522; Paschal's Dig., art. 1407.) In matters of public interest any citizen may sue. (High on Ex. Rem., sec. 431; County of Pike v. State, 11 Ill., 202; Hamilton v. State, 3 Ind., 452; People v. Collins, 19 Wend., 56.)

VI. Mandamus will lie to enforce the performance of a clear official duty. (High on Ex. Rem., secs. 401, 427; Harrington v. County Commissioners, 22 Pick., 263; Lamb v. Lynd, 44 Penn., 336.)

*W. A. Evans, H. W. Lyday & Son, Hale & Scott,* and *B. J. Baldwin,* for appellees.

ROBERTS, CHIEF JUSTICE.—This case was advanced to a hearing, on motion of the plaintiffs in error, under rule 59, being a case relating to a matter of general public interest. It has been presented and argued by counsel, on both sides, in a most satisfactory manner, with a production of authorities that has enabled us to comprehend the case readily, and to come to a conclusion upon it at once, without delay.

This suit, which was held by the District Court to be not maintainable, is an application for the writ of mandamus, brought by the plaintiffs in error, as citizens and inhabitants, against the defendants in error, as members of the Commissioners' Court of Fannin county, to compel them to proceed to organize the county of Webster, by virtue of and in pursuance to "a declaration creating the county of Webster," made by the Constitutional Convention, and passed on the 26th of August, 1868. (See Ordinances in Pamphlet, p. 48.)

The questions raised are: Did the Convention have the right to pass such a legislative act? Has the District Court

the right, under the Constitution and laws, to issue a mandamus to the County Commissioners' Court to perform such a duty? And if these questions should be answered in the affirmative, is it sufficiently certain that the said declaration is still in force as a law, to make it plainly the imperative duty of said Commissioners' Court to carry it out?

Unless this last question can be answered in the affirmative, it is unnecessary to consider or to express any opinion upon the preceding questions; for it must be made to appear to be plainly a subsisting duty, to justify the use of the remedy of mandamus to compel its performance. (High on Ex. Rem., sec. 32, and see numerous mandamus cases in the Texas Reports.) It is not contended that this declaration was a provision of the Constitution that could not be changed by subsequent legislation. Its object was, obviously, to confer upon the persons who occupied a particular territory within certain organized counties a beneficial privilege of constituting a county, as a public convenience.

It declared that " a new county, to be called Webster, is hereby established out of portions of the counties of Fannin and Lamar." It made it the duty of the people of said county of Webster to proceed to organize said county in accordance with the statute of 1848 for the organization of new counties; and it made it the duty of the County Court of Fannin county, as soon as is convenient after the passage of the declaration, " to organize the said county of Webster, by holding elections for the purpose of electing all county officers, or recommending suitable persons to the commander of the fifth military district to fill said offices." At that time offices were generally filled by such appointments, and that mode of organizing the county being in harmony with the policy then prevailing in the military government of the State, the County Court adopted the alternative allowed them to perform the duty required of it, by sending up to the commanding general the names of persons to be appointed to the several county offices, as it is stated was done in the petition. When this

24

was done, it may well be argued that they had performed the whole duty required by the declaration. (High on Ex. Rem., sec. 328.) This view is strengthened, when we consider the extraordinary powers conferred by Congress upon, and exercised by, the military commander in directing the internal affairs of the State, extending even to the suspension and abrogation of particular laws, as well as the appointment of officers. And as the declaration evidently contemplated immediate action in organizing the county, his failure to appoint the persons to said offices, whose names were sent to him by the County Court for that purpose, might well have been taken to be a discountenancing of this legislative act, which justified the County Court in declining any further action under it.

Numerous acts of said convention show that the commanding general was relied on to carry out their acts of this character. His rule, however absolute for the time, was designed to be temporary, provisional, and to a great extent discretionary, and not to be dependent upon the action of the Constitution, or any other power within the State; and the force of any such legislative act requiring his concurrent action to carry it out, may be regarded as not being a continuing and permanent provision, when he failed to carry it out.

No further action seems to have been taken by the people for whose benefit said declaration was made; nor by the convention, that was in session long afterwards; nor by any subsequent Legislature, to secure the privilege of organizing said county; from which it may be concluded that it was regarded as an abandoned project.

The burden of taxation imposed by said declaration, and the fixing of the county-seat at Honey Grove, may have been reasons why the persons interested did not further, at that time or subsequently, seek to consummate to completion the privilege sought to be conferred upon them by it.

The fact that it was declared that "a new county," with certain boundaries, "is hereby established," did not have the

effect to create a county; because in the same declaration it was contemplated and provided that certain things should be done, in organizing it, which were necessary to be done in order to separate its territory from the jurisdiction of the two counties from which it was taken, and give it a distinct identity as a county, a body corporate, constituting one of the civil and political divisions of the State.

That the convention of 1875 regarded and treated this privilege as abandoned, and the declaration as obsolete, from its not having been carried out, is manifest, from its being omitted in the enumeration of the counties by names, both organized and unorganized, in the judicial districts; and that is a very cogent reason why the said declaration should be regarded as being obsolete and inoperative, because it was not carried out as contemplated by it, being authoritative action of the highest power of the State ignoring its subsisting force as a law.

Under all these circumstances, we are of opinion that it is not plainly the imperative duty of the Commissioners' Court of Fannin county, at this late day, to proceed to order an election for the organization of Webster county, and that a mandamus should not be issued to require it.

AFFIRMED.